### STATE OF CONNECTICUT *v.* JOSE NIEVES

SPEZIALE, C. J., PETERS, HEALEY, PARSKEY and SHEA, Js.

Argued November 4, 1981—decision released January 5, 1982

*Bruce A. Sturman,* assistant public defender, with whom, on the brief, were *Jerrold H. Barnett* and *Vincent J. Giedraitis,* public defenders, for the appellant (defendant).

*Carl Schuman,* assistant state's attorney, with whom, on the brief, were *John M. Bailey,* state's attorney, *Herbert Appleton,* assistant state's attorney, and *Elizabeth Palmer,* legal intern, for the appellee (state).

SHEA, J. The defendant was charged with possession of a narcotic substance with intent to sell in violation of General Statutes § 19-480a.[1] After the conclusion of the evidence the court directed a ver-

[1] "[General Statutes] Sec. 19-480a. PENALTY FOR ILLEGAL MANUFACTURE, DISTRIBUTION, SALE, PRESCRIPTION OR ADMINISTRATION BY NON-DRUG-DEPENDENT PERSON. (a) Any person who manufactures, distributes, sells, prescribes, dispenses, compounds, transports with the intent to sell or dispense, possesses with the intent to sell or dispense, offers, gives or administers to another person one or more preparations, compounds, mixtures or substances containing an aggregate weight of one ounce or more of a heroin, methadone or cocaine or a substance containing five milligrams or more of lysergic acid diethylamide, except as authorized in this chapter, and who is not, at the time of such action, a drug-dependent person, shall be imprisoned for a minimum term of not less than five years nor more than twenty years; and, a maximum term of life imprisonment. The execution of the mandatory minimum sentence imposed by the provisions of this subsection shall not be suspended except the court may suspend the execution of such mandatory minimum sentence if at the time of the commission of the offense (1) such person was under the age of eighteen years or, (2) such person's mental capacity was significantly impaired but not so impaired as to constitute a defense to prosecution."

dict of not guilty of possession with intent to sell and instructed the jury on the lesser included offense of possession of a narcotic substance in violation of General Statutes § 19-481 (a).[2] The jury returned a verdict of guilty and judgment was rendered on the verdict. Posttrial motions for acquittal and for a new trial were denied. The defendant has appealed, claiming error in the denial of his motion for acquittal and in the charge to the jury.

The jury could reasonably have found the following facts: Pursuant to a search warrant, police officers searched the defendant's apartment and person on October 22, 1977, and seized the following items: a toy hydrant, in which a foil packet containing brown powder was stored; two other wrinkled foil packets, the contents of which were brown; one large foil packet containing a white substance; and six syringes. At the conclusion of the search the evidence was taken to the police station, where Detective Colon conducted a Voltox test. The test on a portion of the brown powder which had been enclosed in the foil packet and stored in the toy hydrant was positive, indicating the presence of either an opiate or an amphetamine.[3] The foil

[2] "[General Statutes] Sec. 19-481. PENALTY FOR ILLEGAL POSSESSION. SUBSTITUTION OF MEDICAL TREATMENT FOR CRIMINAL SANCTIONS. (a) Any person who possesses or has under his control any quantity of any narcotic substance, except as authorized in this chapter, for a first offense, may be imprisoned not more than seven years or be fined not more than three thousand dollars, or be both fined and imprisoned; and for a second offense, may be imprisoned not more than fifteen years, or be fined not more than five thousand dollars, or be both fined and imprisoned; and for any subsequent offense may be imprisoned not more than twenty-five years, or be fined not more than ten thousand dollars, or be both fined and imprisoned."

[3] Since the defendant was charged with possession of a narcotic substance, and amphetamine is not classified as such; General Statutes § 19-443 (30); the Voltox test results were inconclusive to establish a violation of General Statutes § 19-481 (a).

packet was folded again, returned to the hydrant and stored with the remaining evidence in a locked compartment at the police station. Two days later, Detective Costardo removed the evidence from this locker and transported it to the state laboratory for analysis. Before turning over the evidence, he completed an inventory form. When Judy Varneckas, a toxicological chemist, subsequently opened the envelope, she counted only five syringes and noted this discrepancy on the laboratory report. Her analysis revealed heroin in the sample taken from the foil packet in the toy hydrant and a minute heroin residue on the two wrinkled foil packages. Charles Reading, a state toxicologist, then conducted his own analysis of another sample obtained from the foil packet stored in the fire hydrant. He described it as a brown resin rather than a powder, and his tests revealed heroin in the brown resin which adhered to the foil. The parties stipulated to the proper return of the evidence from the laboratory to the courthouse.

## I

The defendant first claims that the prosecution failed to prove beyond a reasonable doubt that the substance analyzed and introduced into evidence was the substance seized from the defendant. Accordingly, he assigns error in the court's denial of his motion for acquittal.

"[I]n a criminal prosecution, the state has the burden of proving the case set forth in the information in all its material parts beyond a reasonable doubt, so that the court must find, in order to convict, that all the elements of the crime charged have been established beyond a reasonable doubt." *State v. Johnson,* 162 Conn. 215, 231, 292 A.2d 903 (1972);

see *State* v. *Stankowski,* 184 Conn. 121, 126, 439 A.2d 918, cert. denied, 454 U.S. 1052, 102 S. Ct. 596, 70 L. Ed. 2d 588 (1981). In determining whether the evidence is sufficient to sustain a verdict, " 'the issue is whether the jury could have reasonably concluded, upon the facts established and the reasonable inferences drawn therefrom, that the cumulative effect of the evidence was sufficient to justify the verdict of guilty beyond a reasonable doubt,' " *State* v. *Giguere,* 184 Conn. 400, 402–403, 439 A.2d 1040 (1981); *State* v. *Bember,* 183 Conn. 394, 397, 439 A.2d 387 (1981). "In ruling on such a motion, the evidence presented at trial must be given a construction most favorable to sustaining the jury's verdict." *State* v. *Giguere,* supra, quoting *State* v. *Jackson,* 176 Conn. 257, 262, 407 A.2d 948 (1978).

Upon review we conclude that the evidence in this case was sufficient to justify the verdict of guilty beyond a reasonable doubt. Although it is true that the substance seized was described as a powder, while that analyzed at the state laboratory was considered a resin, evidence of an unbroken chain of custody was introduced. Reading testified that he had seen many samples coming into the laboratory containing heroin in powder form but had also seen several "sticky residues . . . like this before." This testimony, in combination with the virtually uncontroverted evidence concerning the chain of custody, supports the reasonable inference that the material changed from powder into resin while stored in the police locker. Alternatively, the jury may have concluded that the characterization of the substance made by either the doctor or the police officers was inaccurate but that both were referring to the same material. The defendant did not object to the introduction of the state laboratory test results as evi-

dence at trial; see *State* v. *Pina,* 185 Conn. 473, 477, 440 A.2d 962 (1981); nor does he raise their admission as error on appeal.[4] Viewing the evidence as a whole, we conclude that the jury could reasonably have inferred that the material identified at the state laboratory as heroin was the same material seized from the defendant.

## II

The defendant's second claim is that the court erred in its charge to the jury by using the word "substance" to describe the evidence rather than the words "powder" and "resin." This word choice, he alleges, took from the jury the factual issue of whether the substance identified at the state laboratory as heroin was the substance seized from the defendant. In charging on the offense, the court said, "Now, the third element is that the substance *found* must be a narcotic substance. Now, you are instructed that heroin is a narcotic substance. You must ascertain whether or not the substance in ques-

---

[4] If the defendant had made an objection grounded on the state's failure to establish the chain of custody, and had preserved it by taking an exception, our conclusion would be unchanged. The state's burden with respect to chain of custody is met by a showing that there is a "reasonable probability" that the substance has not been changed in important respects. *State* v. *Jones,* 167 Conn. 228, 239–40, 355 A.2d 95 (1974); *State* v. *Johnson,* 162 Conn. 215, 232, 292 A.2d 903 (1972). "The court must consider the nature of the article, the circumstances surrounding its preservation and custody and the likelihood of intermeddlers tampering with it . . . ." *State* v. *Piskorski,* 177 Conn. 677, 697, 419 A.2d 866, cert. denied, 444 U.S. 935, 100 S. Ct. 283, 62 L. Ed. 2d 194 (1979). The standard of review is whether the court has clearly abused its discretion. Id.; *State* v. *Johnson,* supra, 232–33. Although evidence was introduced that six syringes were seized from the defendant's apartment but only five syringes were delivered to the state laboratory, this discrepancy is not conclusive proof of intermeddling. Credible evidence of an unbroken chain of custody was also presented. Explanations other than intermeddling, such as a simple counting error, are plausible. Under all the circumstances, the admission into evidence of the state laboratory results was not a clear abuse of discretion.

tion is heroin. If you find that the substance in question consisted of heroin, then the only remaining question for you to decide is whether the accused knowingly had *heroin* in his possession." (Emphasis added.) The charge clearly instructed the jurors that to return a verdict of guilty they must be satisfied that the evidence proved beyond a reasonable doubt that the defendant possessed heroin. Upon review of the entire charge, we conclude that it was correct in law and sufficient to guide the jury. See *State* v. *Johnson,* 183 Conn. 156, 162, 438 A.2d 855 (1981); *State* v. *Piskorski,* 177 Conn. 677, 746–48, 419 A.2d 866, cert. denied, 444 U.S. 935, 100 S. Ct. 283, 62 L. Ed. 2d 194 (1979).

There is no error.

In this opinion the other judges concurred.