COMMONWEALTH *vs.* GUY A. GILLETTE.

Nos. 91-P-13 & 91-P-987.

Hampden. September 15, 1992. - October 16, 1992.

Present: KASS, FINE, & GILLERMAN, JJ.

*Indecent Assault and Battery. Constitutional Law*, Assistance of counsel.
   *Evidence*, Judicial discretion, Relevancy and materiality, State of mind.

A defendant convicted of indecent assault and battery on his daughter, a
   child under age fourteen, was entitled to a new trial on the ground that
   he had not received effective assistance of counsel, where no reasonable
   trial strategy would have justified his attorney's failure to object to the
   admission of testimony as to a certain statement, made by the defend-
   ant at least seven years before any of the alleged offenses, which
   evinced a disposition to engage in sexual behavior toward his daughter,
   and where, as matter of law, the prejudicial effect of the statement out-
   weighed its probative value. [429-432]

INDICTMENTS found and returned in the Superior Court
Department on February 17, 1988.

The cases were tried before *Daniel A. Ford*, J., and a mo-
tion for a new trial was heard by him.

*James A. Couture* for the defendant.

*Elizabeth Dunphy Farris*, Assistant District Attorney, for
the Commonwealth.

FINE, J. Three indictments charged the defendant with in-
decent assault and battery on a child under fourteen, his
daughter. He was found guilty by a jury on all three charges.
In this appeal from his convictions and the denial of his mo-
tion for a new trial, the defendant contends that he was de-
prived of the effective assistance of counsel.

The Commonwealth's case at trial in the summer of 1989
consisted of the following evidence. The defendant's daugh-

ter, Diane,[1] born September 19, 1977, testified that after her parents were divorced she and her brother Richard, older than she by one year, visited with her father, the defendant, at his mother's house approximately every other week. The defendant regularly had the children take naps. Richard would lie on the floor under a blanket and, in the same room, the victim and the defendant would share a bed. Diane testified that on almost every such occasion, over a period of more than a year, the defendant would fondle her in the vaginal area. Richard testified that on one occasion he observed the defendant fondling his sister in her vaginal area and, about a month later, he told his mother what he had seen.

The children's mother confirmed in her testimony that in March of 1984 Richard told her about the touching, relating his conversation with her in some detail. A day or so later, she questioned Diane, who stated that the defendant had been regularly touching her in the vaginal area. The children's mother also testified that, while she was pregnant with another child two and a half years before Diane was born, the defendant told her that if they were to have a daughter, he would take away her virginity.

Both the mother's therapist at the time and a Department of Social Services (DSS) social worker assigned to investigate the sexual abuse charge testified about statements made to them around March of 1984 by the mother, Richard and Diane. The immediate result was the termination of the defendant's right to visitation with the children, but no criminal prosecution. In November of 1987, the mother brought the two children to the Chicopee police station because of unrelated problems she was having with them. Someone unexpectedly brought up the subject of the alleged past sexual abuse.

The police called the defendant in for questioning. He confirmed that during visits with the children before March of 1984 he took naps in the same bed as Diane, with whom he had a very affectionate relationship, but he denied touching

---

[1] The names of the children are fictitious.

her in the vaginal area. He admitted to both the police and to the social worker that he had made the statement attributed to him by the children's mother several years before Diane was born.

The defendant moved for a new trial on grounds of ineffective assistance of counsel. After a nonevidentiary hearing, the judge, who had also presided over the jury trial, issued a lengthy memorandum and denied the motion. The defendant appeals from his convictions[2] and the denial of his motion for a new trial. He contends that there are three respects in which he was deprived of effective assistance of counsel. In examining that contention, we must determine whether his attorney's conduct fell "measurably below that which might be expected from an ordinary fallible lawyer" and whether "the fault probably resulted in forfeiture of a substantial defence," *Commonwealth* v. *Saferian,* 366 Mass. 89, 96, 98 (1974), or, stated otherwise, whether "better work might have accomplished something material for the defense," *Commonwealth* v. *Satterfield,* 373 Mass. 109, 115 (1977). We also have in mind that "[t]rial tactics which, from the vantage point of hindsight, can be seen to have failed do not amount to ineffective assistance unless 'manifestly unreasonable' when undertaken." (Citations omitted.) *Commonwealth* v. *Sielicki,* 391 Mass. 377, 379 (1984).

We only need to consider one claim[3] with respect to which we conclude the defendant has met his burden. The defend-

---

[2] The defendant also challenged the admission of certain fresh complaint testimony. We do not consider that argument because the issues raised were decided adversely to the defendant in *Commonwealth* v. *Licata,* 412 Mass. 654 (1992), after the defendant filed his brief in this case.

[3] In addition to the contention we discuss, the defendant argues that counsel was ineffective in failing to object to a considerable number of out-of-court statements of the victim, her mother, and Richard. To the extent that the statements may have been both inadmissible and prejudicial, the defendant, nevertheless, has not shown that counsel's failure to object was not part of a consciously-adopted and reasonable trial strategy. Further, the defendant contends that counsel should have moved for a required finding of not guilty on two of the three indictments because of the dates to which they referred. As there was evidence of at least three offenses, and as all of the indictments, by their terms, included the period to which

ant contends that trial counsel provided ineffective assistance in failing to object to the testimony concerning the defendant's statement to his wife two and one-half years before she gave birth to Diane that he would be the one to take his daughter's virginity. The statement was highly prejudicial and, unquestionably, any "ordinary fallible lawyer" would have sought to keep it out of the case. The question is whether such an effort on counsel's part would have been successful or have made a difference. See *Commonwealth* v. *Medina*, 20 Mass. App. Ct. 258, 261 (1985).

Assuming the defendant could have shown that the statement was made in the course of a private conversation during the marriage, an objection to his ex-wife's testimony about the statement should have been sustained on the basis of the marital disqualification. G. L. c. 233, § 20. If other witnesses could have testified that the defendant admitted to them having made the same statement, however, the wife's testimony would only have been cumulative. In his memorandum of decision on the motion for a new trial, the judge stated that, had he been asked to rule at trial, he would probably have exercised his discretion to admit evidence about the statement from the police officer and the social worker to whom the defendant admitted having made it. The judge explained: "I view the defendant's statement as persuasive evidence of a pre-inclination on his part to sexually molest his daughter. Because a lustful belief that a father should be the one to introduce sex to his daughter is the type of emotion that might be expected to continue to exist in a person over time, I do not feel that the statement was too remote in time to be rendered inadmissible."

The defendant contends that such a ruling would have been an abuse of discretion. A trial judge has broad discretion, however, to determine whether the probative value of otherwise admissible evidence outweighs its prejudicial impact. See *Commonwealth* v. *Tobin*, 392 Mass. 604, 613

that evidence referred, any such motion for a required finding could not have been granted.

(1984); *Commonwealth* v. *Lewin (No. 2)*, 407 Mass. 629, 631 (1990).

Unquestionably, the defendant's statement had some rational tendency to prove the issue in the case, whether he sexually abused his daughter. Although the alleged criminal offense did not involve taking Diane's virginity, the statement revealed an inappropriately lustful attitude toward his yet unborn daughter and a predisposition to commit the crimes charged. See *Commonwealth* v. *Piccerillo*, 256 Mass. 487, 489 (1926); *Commonwealth* v. *LaSota*, 29 Mass. App. Ct. 15, 24-25 (1990); *Commonwealth* v. *Azar*, 32 Mass. App. Ct. 290, 300 (1992); *State* v. *Jenkins*, 7 Conn. App. 653, 655 (1986). Compare *Commonwealth* v. *Bemis*, 242 Mass. 582, 585 (1922); *Commonwealth* v. *King*, 387 Mass. 464, 469 (1982). As the statement was highly unusual and specific as to what the defendant intended to do to a particular, although as yet nonexistent, individual, any inference that he would be likely to engage in sexual behavior with his young daughter would be based on more than mere speculation. Contrast *Commonwealth* v. *LaSota*, 29 Mass. App. Ct. at 25. Thus, had the statement been made within a reasonable time before or after the alleged incident, the judge's reasoning would have been a sound basis for admitting the statement. The evidence would be inadmissible, however, if too remote from the date of the alleged offense. See *Commonwealth* v. *Bemis*, 242 Mass. at 585; *Commonwealth* v. *Machado*, 339 Mass. 713, 715 (1959). Compare *Commonwealth* v. *Brenner*, 18 Mass. App. Ct. 930, 931 (1984) (prior bad act evincing disposition to engage in sexual acts with the victim admissible if "within the time frame of the complaint").

Here the statement was made at least seven years before any incident of sexual abuse, and it was made long before the defendant even had a daughter.[4] No case brought to our

---

[4] A careful review of the transcript makes it clear that the defendant's admissions to the police officer and social worker that he had made the statement were not adoptions of the statement as representing his then-current state of mind.

attention has dealt with an act done, or a statement made, more than a few months before or after the alleged offense. Moreover, the jury heard the statement from three separate witnesses, and it was emphasized both in the prosecutor's opening and closing arguments. We conclude, as matter of law, that the prejudicial effect of the statement, made at least seven years before the alleged offenses, outweighed its probative value. Thus, not only would better work have succeeded in keeping the highly prejudicial statement out of the case, but better work would have accomplished something material for the defendant. No reasonable trial strategy to justify the omission has been suggested by the Commonwealth, nor can we imagine any.

*Judgments reversed.*
*Verdicts set aside.*